No. 4405.

(Court of Appeal, Parish of Orleans.)

MISS MARTHA FLANAGAN vs. DUNN PHIL-
BRICK & CO.

1. It is elementary that responsibility attaches to a person not only for the damage occasioned by his own act, but for that which is caused by the act of persons for whom he is answerable.
2. Thus, masters are responsible for the damages occasioned by their servants.
3. But this responsibility attaches only when the injury is done by the servant in the exercise of the functions in which they are employed.

Appeal from the Civil District Court, Division E.

R. J. Maloney, for Plaintiff and Appellant.

Gustave Lemle, for Uefendant and Appellee.

MOORE, J. This was a suit to hold the master answerable in damages for injuries occasioned the property of a third person by the acts of the master's servants.

The allegations of the petition, to quote same in full, are:

"That she is the owner of certain premises situated on Josephine street, between Claiborne and Derbigny streets, in this city, and on the sidewalk in front of said premises there was growing during the month of November, 1905, a beautiful shade tree, which not only added to the value of the property, but was a convenience and comfort to her, and in front of the said property, as a sidewalk, cinders had been packed, so that the same was serviceable and also added to the value of the property.

"Petitioner further represents that the said defendant caused their wagons, loaded with material, to be driven on the sidewalks during the said month of November, 1905, and notwithstanding notice by petitioner to defendants to discontinue their acts, said defendants persisted therein, with the result that her sidewalk was injured beyond repair and the said shade tree above mentioned was torn from its roots and destroyed by the reckless, wanton and deliberate acts of the said defendants in driving their carts and wagons in such manner as to strike it and cause its destruction.

297

"Petitioner represents that, on account of the actions of said defendants, she has been damaged in the following sums:

"On account of the damage to her sidewalk, the sum of fifty dollars.

"On account of the loss of her shade tree, the sum of five hundred dollars.

"On account of the deliberate, wanton and malicious acts of said defendants, and as punitory and exemplary damages, the sum of one thousand dollars.

"Petitioner avers amicable demand without avail.

Subsequently, the petition, by leave of Court, was amended "so as to conform to the following allegations" as follows:

"That the shade tree complained of was cut down by the workmen of the defendants, *by their instructions,* and that the tree was situated, not in front of the property, but on the sidewalk on the side thereof."

The answer is substantially a general denial.

There was judgment rejecting plaintiff's demand and she appeals.

It is elementary that responsibility attaches to a person not only for the damages occasioned by his own acts, but for that which is caused by the act of persons for whom he is answerable. C. C. 2317.

Thus masters are answerable for the damages occasioned by their servants but only when the injury is done by the servant in the exercise of the functions in which they are employed. C. C. 2320.

If the damage is done by the servant outside the scope of his employment, he and not his master, is responsible therefor. 47 A. 37, 1656; 27 A. 432; 43 A. 37; 52 A. 2129; 15 La. 171; 28 A. 6; 105 La. 122; unless, of course, the master was present and could have prevented the act which caused the damage and had not done so, or where the act complained of was done under the masters instructions.

The petition in the instant case does not allege—neither specifically nor inferentially—that the act of defendan't servants in cutting down the tree was done by them within the scope of their employment, or, in the language of the Code,, "in the exercise of the functions in which they are employed." C. C. 2320.

The cause of action, as the supplemental petition affirms it,

is founded exclusively on the alleged fact that "the tree complained of was cut down by the workmen of defendants *by their instructions.*"

The proof, however, is overwhelming, not only that the tree was not cut down by defendants servants upon the instructions of their masters, but that it was not cut down by them, or any of them, in the exercise of the functions in which they were employed, or in the presence of the masters or any one of them, or with their knowledge or consent.

The facts are that defendants were under contract with the Sewer and Water Board of the City of New Orleans, to deepen and woodline the Melpomene and Claiborne Canals from Broad to Claiborne Streets on Melpomene Street and from Melpomene to Third Streets on Claiborne Street, in said city.

Some of the lumber necessary for the work was to be furnished under a written contract, to the defendants, by the Ruddock-Orleans Cypress Co.; a stipulation in the contract being that the latter company was to deliver to defendants the materials contracted for alongside of the Canal at the nearest point where needed, that can be reached by team. The manner in which the Ruddock-Orleans Cypress Co. were to deliver the materials; the vehicles to be employed; the direction and control of their servants engaged in the execution of their contract and route to be adopted in order to reach the point of delivery, were matters which concerned that Company alone.

Some time during the month of November, 1905 the Ruddock-Orleans Cypress Co., in its efforts to make delivery under the contract of two loads of lumber to defendants, hauled same, with its own teams and wagons and in the custody and control of its own servants, out through Josephine Street, in order to reach the Melpomene Canal, at a point where defendant's servants were then engaged in the exercise of the functions of their employment, and which point was about 2000 feet from and back of the corner of Josephine and Derbigny Streets, where plaintiff's property is situated.

Josephine Street at this point was, at this time, almost impassable. The street was heavily mudded and deep-holed and was nearly of the same height as the sidewalk, which was unpaved. There was little, if any, gutter between street and sidewalk. The only way of passing over the bad spot with the

teams was by driving around on the sidewalk and next to the fence, if a tree, which prevented this movement at this point, was cut away. The servants of the Ruddock-Orleans Cypress Co. in charge of the teams concluded to cut this tree down, but, having no tools with which to do the work, applied to defendant's servants to aid them in the matter; whereupon two of the latter repaired to the spot, and with their saw and ax, cut down the tree, first asking of the tenants of the property whether there would be any objection thereto, and being answered that "they didn't think there would be."

The tree, which was an elm tree, and conclusively shown to have been dead at the time, being thus removed, the wagons drove over the sidewalk and thence on the street, and finally made delivery at the point of destination.

It is shown that the nature of defendant's work and of their servants did not require them to be in, or to go to, the neighborhood of Josephine and Derbigny Streets; that it was no part of their employment to assist the Ruddock-Orleans Cypress Co. in the delivery of the lumber to defendants; that it was not to the benefit or advantage of defendants that this company should haul through Josephine Street; nor, as it adopted that route, that defendants would or could have been either benefited or disadvantaged by the teams turning back and going through Broad or Jackson Street, and thence across to the works, which the teams of this corporation could have and often had done, and which streets were in good order and condition, and it is furthermore shown that it was suggested, some time prior to this incident, to the defendants that this tree be cut, "so that the wagons would have a better chance to go through the mudhole next to the fence" at this point, and that they answered: "No! It is not our business to make a way for those wagons; it is up to them to deliver the stuff."

The act of defendant's servants in cutting this tree was clearly and entirely outside of the scope of their employment. Their action in the premises was influenced solely by a matter of graciousness, assistance and accommodation on their part, personally, to the servants of another master engaged in a different occupation.

For the consequence of their action in this regard and as thus

influenced, their masters are not responsible.

The judgment is affirmed.

June 22, 1908.

Rehearing refused June 30, 1908.

Writ denied by Supreme Court Aug. 18, 1908.